Filed:  December 3, 2002

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

Nos. 01-1850(L)
(CA-95-13-3-C)

Virginia Vermiculite, Limited,

Plaintiff - Appellant,

versus

The Historic Green Springs, Incorporated,

Defendant - Appellee.

O R D E R

The court amends its opinion filed October 4, 2002, and reported at 307 F.3d 277, as follows:

On page 2, section 5 -- the section is corrected to read: "Affirmed by published opinion.  Judge Luttig wrote the opinion, in which Judge Williams and Judge Michael joined."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

VIRGINIA VERMICULITE, LIMITED,
    *Plaintiff-Appellant,*

    v.

THE HISTORIC GREEN SPRINGS,
INCORPORATED,
    *Defendant-Appellee,*

    and                           No. 01-1850

W.R. GRACE & COMPANY -
CONNECTICUT,
    *Defendant.*

NATIONAL TRUST FOR HISTORIC
PRESERVATION; THE LAND TRUST
ALLIANCE,
    *Amici Curiae.*

VIRGINIA VERMICULITE, LIMITED,
 *Plaintiff-Appellee,*

 v.

THE HISTORIC GREEN SPRINGS,
INCORPORATED,
 *Defendant-Appellant,*

 and        No. 01-1925

W.R. GRACE & COMPANY -
CONNECTICUT,
 *Defendant.*

NATIONAL TRUST FOR HISTORIC
PRESERVATION; THE LAND TRUST
ALLIANCE,
 *Amici Curiae.*

Appeals from the United States District Court
for the Western District of Virginia, at Charlottesville.
James H. Michael, Jr., Senior District Judge.
(CA-95-15-3-C)

Argued: May 6, 2002

Decided: October 4, 2002

Before LUTTIG, WILLIAMS, and MICHAEL, Circuit Judges.

Affirmed by published opinion. Judge Luttig wrote the opinion, in
which Judge Williams and Judge Michael joined.

## COUNSEL

**ARGUED:** Einer Richard Elhauge, Cambridge, Massachusetts, for
Appellant. Charles Hubert Montange, Seattle, Washington, for Appel-

2

lee. **ON BRIEF:** Brian A. Glasser, BAILEY & GLASSER, L.L.P., Charleston, West Virginia, for Appellant. Paul W. Edmondson, Vice President & General Counsel, Elizabeth S. Merritt, Deputy General Counsel, Anita C. Canovas, Assistant General Counsel, NATIONAL TRUST FOR HISTORIC PRESERVATION, Washington, D.C., for Amici Curiae.

---

## OPINION

LUTTIG, Circuit Judge:

Virginia Vermiculite, Limited (VVL) appeals a district court order granting summary judgment to Historic Green Springs, Incorporated (HGSI) on VVL's claim that HGSI and W.R. Grace & Company (Grace) conspired to restrain trade of Louisa County, Virginia, vermiculite mining rights, in violation of section 1 of the Sherman Act. VVL also appeals the district court's verdict, after a bench trial, that the alleged conspiracy did not constitute a violation of the Virginia Civil Conspiracy Act (VCCA). Although we disagree with the district court's reasoning, we agree with its ultimate conclusions, and therefore affirm.

I.

The relevant facts, which are amply set forth in the prior appeal, *see Virginia Vermiculite, Ltd.* v. *W.R. Grace & Co.*, 156 F.3d 535 (4th Cir. 1998) (*VVL I*), and the district court's thorough opinions, *see Virginia Vermiculite, Ltd.* v. *W.R. Grace & Co.*, 108 F. Supp. 2d 549 (W.D. Va. 2000) (*Summary Judgment*); *Virginia Vermiculite, Ltd.* v. *W.R. Grace & Co.*, 144 F. Supp. 2d 558 (W.D. Va. 2001) (*Trial*), are as follows.

VVL brought suit against Grace and HGSI, a nonprofit organization dedicated to preserving the Green Springs National Historic Landmark District in Louisa County, Virginia, in a controversy involving the mining and purification of vermiculite, a scarce mineral with many industrial uses. Domestic vermiculite reserves are only known to exist in Montana, South Carolina and Virginia. The Virginia reserves lie almost entirely within Louisa County.

3

In 1976, VVL began mining vermiculite in Louisa County. At that time, Grace held, unused, an overwhelming percentage of the region's vermiculite-laden lands. Though Grace originally planned to mine its Virginia holdings, by 1991 it decided that the costs required to build a local purification plant were prohibitive. In an attempt to sell its unused holdings, Grace began negotiations with the region's sole vermiculite miner, VVL. The companies failed to reach agreement, however, and Grace instead entered discussions with HGSI about the possibility of donating the land to the nonprofit. Grace ultimately decided to donate its holdings to HGSI, and proceeded to do so through a gift-deed, which, importantly, limited the gift by concurrently attaching restrictive covenants to the land deeds. The covenants, waiveable only by agreement of Grace and the gift-deed holders (*i.e.*, HGSI), prohibited use of the land for vermiculite mining or transport.

VVL brought suit against Grace and HGSI alleging violations of sections 1 and 2 of the Sherman Act and related state law provisions. Specifically, VVL claimed that the donation constituted an unreasonable restraint of trade of Louisa County vermiculite mining rights and a violation of the VCCA. The district court dismissed VVL's section 1 claim against Grace, and all claims against HGSI, for failure to state a claim, but on appeal we reversed. *See VVL I*, 156 F.3d 535. On remand, the district court granted summary judgment to Grace and HGSI on all antitrust claims except for conspiracy to monopolize. *See Summary Judgment*, 108 F. Supp. 2d at 554. Grace subsequently settled all claims with VVL, removing itself from this action. The district court, after a bench trial, found in favor of HGSI on all remaining counts. *See Trial*, 144 F. Supp. 2d at 610. VVL only appeals the district court's grant of summary judgment to HGSI on the section 1 claim, and the court's judgment for HGSI on the VCCA claim.

II.

VVL contends that the district court erred by granting summary judgment on the section 1 claim to HGSI under the rule of reason. We agree with the district court's disposition of VVL's claims, though we do not reach the detailed rule of reason analysis the district court undertook. We instead affirm the grant of summary judgment on the basis of the reasoning below.

4

A.

We review *de novo* a grant of summary judgment under section 1 of the Sherman Act, *see Eastman Kodak Co.* v. *Image Technical Services, Inc.*, 504 U.S. 451, 466 (1992), to determine if the plaintiff "establish[ed] the existence of [all] element[s] essential to [its] case, and on which [it] would bear the burden of proof at trial." *Celotex Corporation* v. *Catrett*, 477 U.S. 317, 322 (1986). Because VVL claims that Grace and HGSI conspired in violation of section 1 of the Sherman Act, it must establish, as a genuine issue of fact, that Grace and HGSI entered into an *illegal*, conspiratorial agreement. *See Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

B.

It is incontestable that "concerted action" in restraint of trade lies at the heart of a Sherman Act section 1 violation. The language of the Act expressly requires such a concert. *See* 15 U.S.C. § 1 ("Every contract, combination . . . or conspiracy, in restraint of trade . . . is declared to be illegal."). The Supreme Court has gone so far as to say that the "distinction between unilateral and concerted action is *critical*," *Fisher* v. *Berkeley*, 475 U.S. 260, 266 (1986) (emphasis added), and is "*necessary* for a proper understanding of the [act]," *Copperweld Corp.* v. *Independence Tube Corp.*, 467 U.S. 752, 769 (1984) (emphasis added).

Because "[i]ndependent action is not proscribed [by § 1]," *Monsanto Co.* v. *Spray-Rite Service Corp.*, 465 U.S. 752, 761 (1984), courts may impose antitrust liability on the basis of unilateral conduct only under section 2 of the Sherman Act, which prohibits monopolization and attempts to monopolize. *See, e.g., Aspen Skiing Co.* v. *Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985).

Under this well-established framework, it is incumbent on VVL, if it is to survive summary judgment, to proffer evidence that can establish the existence of illegal, concerted activity by the defendants in restraint of trade.

The district court recognized the imperative that evidence of concerted action be proffered on the section 1 claim. *See Summary Judg-*

*ment*, 108 F. Supp. 2d at 563. It also understood that the analysis is governed by the Supreme Court's statements that the plaintiff must prove the defendants "had a conscious commitment to a common scheme designed to achieve an unlawful objective," *Monsanto*, 465 U.S. at 764, and that the plaintiffs evidence must "tend[ ] to exclude the possibility that the alleged conspirators acted independently," *Matsushita*, 475 U.S. at 588. Having stated these principles as its authority, the court held that "evidence of the donations containing restrictive covenants alone satisfies the plaintiff's burden of producing sufficient evidence to establish concerted action under § 1," *Summary Judgment*, 108 F. Supp. 2d at 563, and in so doing, rejected HGSI's contrary argument that "engaging in these transactions [*i.e.*, taking receipt of the gift-deed and its attached covenants] is not evidence of concerted action." *Id*. The district court erred in this conclusion.

The term "concerted action" must be construed in a more refined manner, for "concerted activity subject to § 1 is judged more sternly than unilateral activity under § 2," *Fisher*, 475 U.S. at 266. Thus, it is of "`considerable importance' that independent activity by a single entity be distinguished from a concerted effort by more than one entity *to fix prices or otherwise restrain trade* ," *id*. (citation omitted) (emphasis added).

The Supreme Court, in further describing the conduct that constitutes concerted activity for section 1 purposes (*i.e.*, susceptible to section 1 condemnation as being unlawful for fixing prices or restraining trade), has said that it:

> deprives the marketplace of the independent centers of decision making that competition assumes and demands . . . . [It] reduces the diverse directions in which economic power is aimed but suddenly increases the economic power moving in one particular direction. [It involves a] merging of resources.

*Copperweld*, 467 U.S. at 769 (Burger, C.J.).

In *Copperweld*, the Court, citing to *Monsanto*, which was decided just three months earlier, rejected the contention that a parent corpora-

6

tion and an individually incorporated, but wholly-owned subsidiary of that parent, could engage in concerted activity that was unlawful under section 1. Notwithstanding the everyday sense in which their joint efforts were concerted action, their conduct was held not to be concerted action for purposes of section 1, because "agreements among them do not suddenly bring together economic power that was previously pursuing divergent goals." *Id*.

*Copperweld* well demonstrates that the Supreme Court has applied a gloss to the term "concerted action" when using it in the antitrust context. And, accordingly, courts must treat this phrase as a term of art in the context of the Sherman Act; it cannot be understood as it might be in ordinary parlance, to reach any and all forms of joint activity by two or more persons. It must be defined consonant with its role in the antitrust analysis, as the basis for determining the unlawfulness of conduct prohibited by section 1.

We reaffirm what was made clear by *Copperweld*, that concerted activity susceptible to sanction by section 1 is activity in which multiple parties join their resources, rights, or economic power together in order to achieve an outcome that, but for the concert, would naturally be frustrated by their competing interests (by way of profit-maximizing choices).

Purported gift transactions can present atypical antitrust questions. If the gift is genuine, *i.e.*, if it is given unilaterally and in no way reflects a merging of the parties' resources, rights, or economic power, then it satisfies section 1. On the other hand, if the parties combine (*i.e.*, bring into concert) their resources, rights, or economic power in such a way as to counteract naturally competing interests that would otherwise set them at odds, though they try to disguise the combination by way of a gift transaction, concerted action is present and their conduct falls within the purview of section 1.

In the instant case, VVL proffered no evidence that the donation by Grace to HGSI was not a genuine (*i.e.*, unilaterally given) gift. It often can be difficult to determine whether a purported gift is a gift in fact, or whether it merely disguises bilateral action by which two parties join their resources, rights, or economic power together. But here, VVL simply did not proffer evidence sufficient to raise that dif-

7

ficult question. VVL did not proffer evidence that HGSI joined any resource to Grace's in order to establish the covenants, or to affect the land transfer. Nor did VVL allege that HGSI exercised a right or economic power in consideration for the gift. In other words, insofar as the record discloses, only Grace, not HGSI, exercised any form of right, resource, or economic power. And neither was the transaction brought about by, or in order to achieve, a merger of the two parties' forces, which might in turn be trained in a "particular direction," *see Copperweld*, 467 U.S. at 769, counteracting the naturally competing interests that would otherwise set them at odds.

Grace alone had the right and power to attach the covenants. Its unilateral action in doing so was, for the reasons discussed above, beyond the reach of section 1. As a result, we conclude that VVL did not proffer evidence that the defendants "had a conscious commitment to a common scheme designed to achieve an *unlawful* objective," *Monsanto*, 465 U.S. at 764 (emphasis added).

VVL's theory of HGSI's liability rests on the contrary presumption that concerted action existed by virtue of HGSI's receipt of the gift. Throughout its briefs, VVL characterizes HGSI's receipt of the gift as affirmative section 1 action, terming the covenants that Grace attached to the land as the "Grace and HGSI covenants," and referring to the attachment of the covenants to the land as something HGSI actively did, along with Grace. *See*, *e.g.*, Appellant's Br. at 8; *see also id*. at 51.

To bolster its theory, VVL spends a great deal of its brief attributing the restrictive effect of the covenants directly to HGSI's willingness to receive the gift from Grace. For example, VVL cites portions of the district court's opinions in this case, interchanging the district's court precise finding that "a substantial portion of the merchantable Virginia vermiculite reserves is foreclosed *by the donations*," *Summary Judgment*, 108 F. Supp. 2d at 575, for the different conclusion that "`a substantial portion of the merchantable Virginia vermiculite reserves is foreclosed *by' the Grace-HGSI conspiracy*." Appellant's Br. at 78; *see also id*. at 8, 11, 21, 34, 35. We do not find this approach persuasive.

8

First and foremost, HGSI's receipt of the gift did not reflect a merging of the two defendants' rights, resources, or economic power. Grace alone had the power to give away the land. The donation represented merely a transfer of right, resource, and economic power from Grace to HGSI. Because there was no merger at all, *a fortiori*, the donation cannot be understood as reducing the diverse directions in which the parties' forces had been aimed, nor as resulting in the training of such forces in one particular direction.*

VVL's theory also implies that Grace benefitted from gifting the land to HGSI, and that such benefits were inducements from HGSI to establish the covenants. But, in the absence of an exercise by HGSI of a right, resource, or economic power to induce Grace to act as it did, HGSI contributed nothing to Grace. All the benefits, not attributable to the covenants, that Grace expected to enjoy as a result of the gifting, *e.g.*, tax benefits, were benefits that did not stem from an act by HGSI. Tax deductions, for example, are the result of the government's largesse, not the giftee's reciprocation.

This conclusion squares with the long-established tradition of understanding gift-giving as a unilateral activity, despite the all too obvious fact that every gift ultimately involves someone else's receipt. It would be an odd result for the mere receipt of a gift to be viewed as proof of concerted action in the antitrust context, while in all other legal contexts gift-giving is wholly defined by reference to its unilateral character.

All this is not to say that in the instant case, HGSI did not in fact join some right, resource, or economic power to Grace's, in order to achieve an outcome otherwise unachievable due to the naturally competing interests of the two. It is only to say that VVL did not proffer

---

*VVL apparently recognizes the necessity of construing "concerted activity" in the manner we suggest is required, attempting to characterize the defendants' conduct as resulting because they "thought they needed an agreement *to restrain them[selves] from making certain market choices*." Appellant's Br. at 17. What VVL's implicit admission withholds, however, is the equally important acknowledgment that the "market choices" the two parties to concerted activity must be trying to avoid, are market choices that would set them at odds.

evidence of such. Had HGSI been in a position to impose a covenant and offered that covenant in exchange for the parcel, a court could find that Grace and HGSI had combined economic power to establish the covenants and that consequently there had been concerted action. But VVL proffered no evidence of an exercise of right, resource, or economic power by HGSI that diminished market forces created by the naturally competing interests of the two entities.

Because VVL failed to proffer evidence that Grace's actions were not unilateral and that Grace and HGSI engaged in concerted activity as that term must be understood in the antitrust context, the creation of the covenants and the giving of the gift-deed cannot be held to be conduct proscribed by section 1, and HGSI cannot be held liable for them.

### C.

Because we conclude that the alleged conduct was not a violation of section 1, we need not, and do not, address VVL's claim that the district court erred by failing to condemn the conduct under quick-look.

Quick-look only "fills in the continuum between *per se* analysis and the full rule of reason," providing a framework for addressing conduct with clear anticompetitive impact, but for which procompetitive justifications also exist, *Continental Airlines, Inc.* v. *United Airlines, Inc.*, 277 F.3d 499, 509-10 (4th Cir. 2002). Here, there are no section 1 anticompetitive effects at all.

### III.

Because there was no antitrust wrong, VVL cannot recover under the VCCA. The district court heard VVL's VCCA claim against HGSI from the bench and concluded that "VVL failed to establish [ ] that HGSI's and Grace's concerted actions caused, threatened to cause, or will cause VVL to suffer any injury," *Trial*, 144 F. Supp. 2d at 610. This judgment followed a bench trial, whose legal conclusions we review *de novo* and whose factual findings we review for clear error. *See Waters* v. *Gaston County, N.C.*, 57 F.3d 422, 425 (4th

10

Cir. 1995). Upon our review, we conclude, as a matter of Virginia law, that VVL's claim is precluded, and thus we do not reach the district court's causation analysis.

The VCCA only imposes liability on those who, in concert, "willfully and maliciously *injure*[ ] another in his reputation, trade, business, or profession by any means whatever," Va. Code Ann. § 18.2-499 (2002) (emphasis added). Because "the basis of the [VCCA] action is the *wrong* which is done under the conspiracy," *Gallop* v. *Sharp*, 19 S.E.2d 84, 86 (Va. 1942) (emphasis added), VVL must point to a violation of a legally protected interest in order to succeed in its suit. *See Citizens for Fauquier County* v. *SPR Corp.*, 37 Va. Cir. 44 (1995) ("Where there is no actionable claim for the underlying alleged wrong, there can be no [VCCA] action . . .").

It follows, *a fortiori*, that without a section 1 or section 2 violation by HGSI or Grace, HGSI could not have injured any protected right of VVL's, and thus VVL cannot prevail under the VCCA.

## *CONCLUSION*

For the reasons stated herein, the judgment of the district court granting HGSI summary judgment on VVL's section 1 claim is affirmed. Likewise, we affirm the district court's verdict for HGSI on VVL's VCCA claim.

*AFFIRMED*

11