UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

KBG HOLDING CORPORATION,
*Plaintiff-Appellant,*

v.

UNION BANK AND TRUST COMPANY,
*Defendant-Appellee,*

v.

TRANSPHOR, INCORPORATED;
RONALD A. LAOS,
*Third Party Defendants-Appellants,*

and

KOMPLETT BAUTRAEGER GES. M.B.H.;
WALTER O. KNAPP,
*Third Party Defendants.*

No. 02-1183

KBG HOLDING CORPORATION,
              *Plaintiff-Appellant,*

              v.

UNION BANK AND TRUST COMPANY,
              *Defendant-Appellee,*

              v.

TRANSPHOR, INCORPORATED;
RONALD A. LAOS,
  *Third Party Defendants-Appellants,*

KBG HOLDING CORPORATION;
TRANSPHOR, INCORPORATED;
RONALD A. LAOS,
  *Third Party Defendants-Appellants,*                No. 02-1204

              v.

UNION BANK AND TRUST COMPANY;
UNION BANKSHARES CORPORATION; G.
WILLIAM BEALE; SCOTT O. NININGER;
ANA MARIA DAY,
  *Third Party Defendants-Appellees,*

              and

KOMPLETT BAUTRAEGER GES. M.B.H.;
WALTER O. KNAPP,
              *Third Party Defendants.*

Appeals from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CA-01-770-3)

Argued: October 29, 2002

Decided: January 8, 2003

Before NIEMEYER, WILLIAMS, and GREGORY, Circuit Judges.

Affirmed by unpublished per curiam opinion.

---

**COUNSEL**

**ARGUED:** Charles Alexander Trainum, Jr., TRAINUM, SNOW-DON & DEANE, P.C., Fredericksburg, Virginia, for Appellants. Alan Durrum Wingfield, TROUTMAN SANDERS, L.L.P., Richmond, Virginia, for Appellees. **ON BRIEF:** Robert A. Angle, TROUTMAN SANDERS, L.L.P., Richmond, Virginia, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

   KBG Holding Corporation (KBG) initiated this action seeking the release of money deposited in the form of International Money Orders (IMOs) in its account at Union Bank & Trust Co. (Union Bank). Union Bank filed a counterclaim against KBG, Komplett Bautraeger Ges. m.b.H. (KBG-Austria), Transphor, Inc., Ronald A. Laos, and Walter O. Knapp seeking damages and a permanent injunction imposing a constructive trust on funds Union Bank exchanged for IMOs that were determined to be counterfeit. KBG, Laos, and Transphor (the KBG parties) then counterclaimed against Union Bank, Union Bankshares Corporation, and three of Union Bank's employees, G. William Beale, Scott Q. Nininger, and Ana Maria Day (the Union Bank parties), seeking compensatory and punitive damages for defamation, malicious prosecution, breach of contract, and illegal seizure of property. The district court dismissed KBG's original complaint, granted actual damages and permanent injunctive relief to Union Bank on its counterclaim, and entered summary judgment in favor of the Union Bank parties on the KBG parties' defamation, malicious prosecution, breach of contract, and illegal seizure of property coun-

terclaims. The issues on appeal are whether Laos is personally liable for Union Bank's losses and whether the district court erred by granting the Union Bank parties' motion for summary judgment on the defamation, malicious prosecution, and breach of contract claims. Finding no error, we affirm the judgments of the district court.

I.

KBG, a Delaware corporation, was formed in November 2000, pursuant to an agreement between Laos and Knapp. According to the agreement, Laos and Knapp were to share ownership of KBG, although Knapp would pay organizational costs, have a majority ownership, and hold the titles of chairman of the board of directors and chief executive officer. Knapp intended to use KBG as a United States-based entity to effect transactions on behalf of Knapp and his company, KBG-Austria.

On November 10, 2000, Laos opened an account with Union Bank in the names of "KBG Holding Company" and "KOMPLETT BAUTRAEGER Ges." Around the same time, Laos approached Beale, the president and CEO of Union Bank, to determine if Union Bank would participate in a business deal that would involve a large deposit of money from KBG-Austria into KBG's account at Union Bank. While Beale initially agreed, later the same day, before the transaction was complete, he withdrew his acceptance on the ground that Union Bank had "no knowledge of [i]nternational business." (J.A. at 25.) In March 2001, Laos opened an account with Union Bank in the name of Transphor, Inc., a corporation of which Laos owns forty-five percent and serves as President.

On August 2, 2001, Laos telephoned the Kenmore branch of Union Bank in Fredericksburg, Virginia, and spoke with Day, a Union Bank customer service representative, about a document he identified as an IMO. That same day, Laos visited Union Bank's Kenmore Branch and presented the document to Day. Day inspected the IMO and saw that it was purportedly drawn on Security Pacific National Bank, a United States bank, and thus could be processed through ordinary bank procedures. Fran Farmer, a Union Bank teller, gave Laos $2000, the face value of the IMO, in return for the IMO.

Union Bank processed the IMO in the ordinary course of business and forwarded it to the Federal Reserve Bank of Richmond on August 2, 2001.[1] On August 9, 2001, Laos again visited Union Bank's Kenmore branch. Laos presented nine additional IMOs in the face amount of $2000 each, all purportedly drawn on Security Pacific National Bank.[2] At Laos's direction, $17,000 was deposited into the KBG account and $1000 was deposited into the Transphor account. The KBG account was then debited $17,000, of which $10,000 was wired to a KBG-Austria account at Erste Bank in Vienna and $7000 in cash was given to Laos. The Transphor account was debited $850, which was wired to a Transphor account in South Africa.

On August 13, 2001, Laos and Knapp returned to Union Bank's Kenmore branch. They presented an additional 600 purported IMOs, each in the face amount of $2000 and purportedly drawn on Security Pacific National Bank. A Union Bank teller inspected, totaled, and handled the distribution of this third set of IMOs. The KBG account at Union Bank was credited $1,200,000 and then debited for the following transactions: a $100,000 transfer to the Transphor account at Union Bank, issuance of $9,500 in cash to Knapp, issuance of a $75,000 cashier's check payable to Laos, and a $525,000 wire transfer to a KBG-Austria account at Erste Bank. Laos and Knapp also prepared and executed a corporate resolution and a new signature card making Knapp a signatory to the KBG account.

The 600 IMOs arrived at Union Bank's processing department late on the afternoon of August 13. Beale and Nininger, Union Bank's security officer, realized that Security Pacific no longer existed, having been merged into Bank of America. Upon contacting Sue Cervantes, a Bank of America security officer, Nininger learned that the IMOs were not genuine. As required by federal banking regulations, Union Bank reported the forged IMOs to the FBI and the Fredericksburg Police Department. After interviewing bank employees, a detective with the Fredericksburg Police caused warrants to be issued for the arrest of Laos and Knapp. Both were subsequently arrested and

---

[1]This IMO was returned unpaid by the Federal Reserve Bank of Richmond on August 20, 2001, and marked as "counterfeit." (J.A. at 340.)

[2]These IMOs also were processed in the ordinary course of business and returned on August 21 and 22 unpaid by the Federal Reserve.

the $9,500 in cash given to Knapp was recovered. Union Bank froze the KBG account, reversed the $100,000 credit to the Transphor account, and stopped payment on the $75,000 cashier's check given to Laos. Attempts to recover the money wired to Erste Bank were unsuccessful. Thus, as a result of the fraudulent IMOs, an account shortage in excess of $535,000 existed in the KBG account at Union Bank. On September 25, 2001, the criminal charges against Laos and Knapp were *nolle prosequied*.

On November 14, 2001, KBG filed a complaint in the United States District Court for the Eastern District of Virginia under the Expedited Funds Availability Act, 12 U.S.C.A. §§ 4001-4010 (West 2001) (EFAA), seeking release of the funds deposited in its account. On November 16, 2001, the district court scheduled an evidentiary hearing for KBG's preliminary injunction request on December 14, 2001.

On November 20, 2001, Union Bank filed an answer and counterclaim against KBG, Laos, Transphor, Knapp, and KBG-Austria seeking to recover its losses resulting from the counterfeit IMOs. Union Bank stated causes of action for breach of contract, actual and constructive fraud, and unjust enrichment, and sought a money judgment and imposition of a constructive trust. Union Bank also sought a preliminary injunction ordering a return of the $525,000 held in an account at Erste Bank in Vienna, Austria. The parties engaged in expedited discovery in preparation for the December 14, 2001 hearings on the competing motions for preliminary injunction.

On December 10, 2001, in a pretrial order, the district court announced that "this case was set for a trial without a jury on December 14, 2001." (J.A. at 108.) Trial was held on December 14 and 21. KBG-Austria and Knapp did not appear at trial. Six witnesses testified, including Laos, and 39 exhibits were admitted into evidence.

On January 4, 2002, the KBG parties filed an answer and counterclaim against the Union Bank parties, stating claims for malicious prosecution, defamation, breach of contract, and illegal seizure of property. These state-law claims were based upon statements made by Beale and Nininger to law enforcement authorities, Union Bank's and Day's alleged failures to take appropriate steps to ascertain whether

the IMOs were valid, and Union Bank's seizure of funds from Transphor's account.

On January 9, 2002, the district court issued an order dismissing KBG's claim under the EFAA and granting Union Bank judgment against KBG, Laos, Transphor, KBG-Austria, and Knapp on Union Bank's counterclaim. The district court found, based upon uncontroverted evidence, that the 610 IMOs presented by Laos and Knapp to Union Bank were counterfeit and concluded that KBG, Laos, KBG-Austria, and Knapp were jointly and severally liable for Union Bank's actual damages of $539,183, plus costs and attorneys' fees. Moreover, the district court determined that the funds wired to Austria, $525,000, constituted a constructive trust and that Knapp and KBG-Austria, as constructive trustees, and Laos and KBG, on account of their joint ventureship with Knapp and KBG-Austria, have personal joint and several liability to Union Bank for the funds in the constructive trust. On February 7, 2002, the KBG parties filed a timely notice of appeal from the district court's January 9, 2002 order.

On February 13, 2002, the district court issued an order granting the Union Bank parties' motion for summary judgment on the malicious prosecution, defamation, breach of contract, and illegal seizure of property claims. The district court determined that Union Bank, in light of the findings of fact in its January 9, 2002 order, met its burden as the moving party and thus the KBG parties could not rely on mere allegations. The KBG parties presented no evidence in the form of affidavits or otherwise to support its allegations. The district court concluded that given the lack of support for the KBG parties' counterclaims, summary judgment in favor of the Union Bank parties was appropriate. On February 21, 2002, the KBG parties filed a timely notice of appeal from the district court's February 13, 2002 order. The two appeals were consolidated, and this court has jurisdiction over the consolidated appeals pursuant to 28 U.S.C.A. § 1291 (West 1993 & Supp. 2002).

II.

A.

Because the January 9, 2002 order is a judgment from a bench trial,[3] we review conclusions of law de novo but may set aside findings of fact only if they are clearly erroneous. *Accord Virginia Vermiculite, Ltd. v. Historic Green Springs, Inc.*, 307 F.3d 277, 284 (4th Cir. 2002). In their appeal from the January 9, 2002 order, the KBG parties challenge the district court's conclusion that Laos is personally liable for Union Bank's losses.[4] One of the bases relied upon by the district court in finding Laos liable was its conclusion that Laos personally committed actual and constructive fraud in the presentation of the IMOs to Union Bank. "To prevail on an actual fraud claim under Virginia law, a plaintiff must prove by clear and convincing evidence '(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misl[ed], and (6) resulting damage to the party misled.'" *Hitachi Credit America Corp. v. Signet Bank*, 166 F.3d 614, 628 (4th Cir. 1999) (quoting *Evaluation Research Corp. v. Alequin*, 439 S.E.2d 387, 390 (Va. 1994)). "Virginia law also recognizes an action for fraud where misrepresentations are made without specific fraudulent

---

[3]As explained above, the district court's pretrial order stated that "this case was set for a trial without a jury on December 14, 2001," the date on which the hearings for KBG's and Union Bank's competing motions for preliminary injunction were scheduled. (J.A. at 108.) Federal Rule of Civil Procedure 65(a)(2) permits a district court to "order the trial of the action on the merits to be advanced and consolidated with the hearing of [an] application" for preliminary injunction. Fed. R. Civ. Pro. 65(a)(2). "Before such an order may issue, however, the courts have commonly required that 'the parties should normally receive clear and unambiguous notice [of the court's intent to consolidate the trial and the hearing] either before the hearing commences or at a time which will still afford the parties a full opportunity to present their respective cases.'" *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (quoting *Pughsley v. 3750 Lake Shore Drive Cooperative Bldg.*, 463 F.2d 1055, 1057 (7th Cir. 1972)). Because the district court's pretrial order provided clear and unambiguous notice that it intended to combine the preliminary injunction hearings with a trial on the merits, there is no indication that the district court abused its discretion.

[4]The KBG parties concede that KBG is liable to Union Bank for the $539,183 shortage in its account under its account agreement and do not dispute the district court's holding that Transphor was unjustly enriched by any money credited to its account based on the fraudulent IMOs.

intent but made with reckless abandon and disregard for the truth." *Id.* (citing *Bradley v. Tolson*, 85 S.E. 466, 467 (Va. 1915)); *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 826 (4th Cir. 1999) (observing that affirmative misrepresentations made recklessly subject the speaker to liability for actual fraud under Virginia law).

The KBG parties concede that there was a "false representation of a material fact which was relied upon by Union Bank, causing it damage."[5] (Appellant's Br. at 39 (footnote omitted).) The KBG parties argue that there is no evidence that Laos knew that the IMOs were counterfeit or that he intended to mislead Union Bank. As stated above, however, an actual fraud action may succeed in the absence of knowledge and intent if the misrepresentations were made recklessly. The district court's finding that "the evidence shows clearly and convincingly that Laos acted with sufficient recklessness to satisfy the scienter element of actual fraud under Virginia law," (J.A. at 344), is therefore sufficient to support its conclusion that Laos committed actual fraud.[6] Moreover, our review of the record indicates that the district court's finding that Laos acted recklessly was not clearly erroneous. We therefore affirm the district court's January 9, 2002 order.[7]

---

[5]Because the KBG parties concede reliance, we do not address whether there is clear and convincing evidence that Union Bank's reliance on Laos's misrepresentation was "reasonable and justified." *See Hitachi Credit America Corp. v. Signet Bank*, 166 F.3d 614, 629 (4th Cir. 1999) ("In order to prove reliance, a plaintiff must demonstrate that its reliance upon the representation was reasonable and justified.").

[6]Even if Laos's recklessness did not rise to the level necessary to support an actual fraud claim, the district court's finding of recklessness certainly supports the conclusion that he was negligent and thus liable for his constructive fraud. *See Hitachi*, 166 F.3d at 628 ("Constructive fraud differs [from actual fraud] only in that the misrepresentation of material fact is not made with the intent to mislead, but is made innocently or negligently; the plaintiff must still prove the other elements of actual fraud—reliance and detriment—by clear and convincing evidence.").

[7]Because the district court's conclusion that Laos personally committed actual fraud is enough to support the imposition of liability on Laos, we do not address the other bases upon which the district court relied. Specifically, we do not reach the issue of whether Laos and KBG were engaged in a joint venture with Knapp and KBG-Austria or whether Laos was personally liable on the grounds that he was a signatory on KBG's account.

B.

We now turn to the KBG parties' challenge to the district court's February 13, 2002 order.[8] We review the grant of summary judgment de novo. *Providence Square Assocs. v. G.D.F., Inc.*, 211 F.3d 846, 850 (4th Cir. 2000). Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of showing that no genuine issue of material fact exists and that the undisputed facts entitle him to judgment as a matter of law. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has properly supported his motion for summary judgment, the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 323-24.

In their motion for summary judgment, the Union Bank parties pointed out that the district court's earlier findings of fact and conclusions of law have a preclusive effect on the pending counterclaims and thus, that there are no genuine issues of material fact. Therefore, to the extent that the district court's earlier findings are determinative of the defamation, malicious prosecution, and breach of contract counterclaims, the Union Bank parties satisfied their burden and the burden shifted to the KBG parties.

To establish a claim for defamation based on statements made to the authorities about Laos, the KBG parties had to provide evidence that Union Bank's report of Laos's fraudulent activity was false. *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993). The KBG parties, however, could not re-litigate the district court's conclusion that Laos committed actual fraud. *See Rhodes v. Commonwealth*, 292 S.E.2d 373, 376 (Va. 1982) ("'[W]hen a[n] issue of *ulti-*

---

[8]In their appeal, the KBG parties do not reference the district court's grant of summary judgment to Union Bank on KBG's counterclaim for illegal seizure of property. Accordingly, that claim is not before us.

*mate fact* has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'") (quoting *Ashe v. Swenson*, 397 U.S. 436, 443 (1970)). Similarly, while the KBG parties had to show a lack of probable cause to establish their malicious prosecution claim, *Niese v. Klos*, 222 S.E.2d 798, 800 (Va. 1976), the district court's conclusion that Laos committed actual fraud demonstrated that there was probable cause to accuse Laos of fraud. *Cf. Bell v. Commonwealth*, 563 S.E.2d 695, 708 (Va. 2002) (explaining that a subsequent guilty verdict demonstrates that there was probable cause to charge defendant with the crime). Finally, the breach of contract claim against Union Bank was premised on allegations that Union Bank failed to ascertain the validity of the IMOs before accepting them. The district court, however, concluded that by presenting the IMOs to Union Bank as valid instruments, Laos warranted to the bank that they would be honored. In other words, in its January 9, 2002 order, the district court concluded that there was no explicit or implied contract between Laos and Union Bank to ascertain the validity or invalidity of the IMOs and thus there is no basis for the KBG parties' breach of contract claim. The burden thus shifted to the KBG parties, who did not present any evidence to support the allegations in their counterclaim. Because the nonmoving party may not rest on his allegations, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), we affirm the district court's grant of summary judgment to the Union Bank parties on the defamation, malicious prosecution, and breach of contract claims.

III.

Having reviewed the record, briefs, applicable law, and considered the oral arguments of the parties, we conclude that the judgments of the district court were correct. Accordingly, we affirm. *See KBG Holding Corp. v. Union Bank & Trust Co.*, No. 3:01CV770 (E.D. Va. Jan. 9, 2002 & Feb. 13. 2002).

*AFFIRMED*